UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMERICAN GROUND TRANSPORTATION, INC. et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE UNITED STATES MARINE CORPS. COMMUNITY SERVICES et al.,<br><br>Defendants. | Case No.: 19-CV-539-CAB-AHG<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS AND TRANSFERRING ACTION TO UNITED STATES COURT OF FEDERAL CLAIMS**<br><br>[Doc. No. 12] |

Before the Court is the Federal Defendants' motion to dismiss Plaintiffs' complaint for lack of subject matter jurisdiction, improper venue, and failure to state a claim. [Doc. No. 12.] The motion has been fully briefed and the Court deems it suitable for determination on the papers submitted and without oral argument. *See* S.D. Cal. CivLR 7.1(d)(1). For the reasons set forth below, the Federal Defendants' motion is granted in part and this case is transferred to the United States Court of Federal Claims.

**I.    BACKGROUND**

Plaintiffs American Ground Transportation, Inc. ("AGT") and Liberty Launch, Inc. ("LLI") (collectively "Plaintiffs") filed this complaint on March 21, 2019, against the

following federal agencies and employees: The United States Marine Corps. Community Services, The Marine Corps Installations West, Marine Corps Base Camp Pendleton Armed Forces Disciplinary Control Board, R.C. German, Jr., Department of Defense, Michael C. Dittamo, R.A. Scott, Steven Garbutt, John Kyle, David Busby (collectively the "Federal Defendants"), and against the following corporation and individuals: Kevin Kohl and Associates, LLC, Kevin R. Kohl, Reza Falahi (collectively the "Private Defendants."). [Doc. No. 1.]

According to the complaint, after submitting an application in response to a request for proposal in May 2010, Plaintiffs were awarded the only contract pursuant to that request and thereby entered into a written concession agreement (the "Contract"), designated as Contract #PNM10-C-0030, with the Marine Corps Community Services ("MCCS"), of the United States Government, on or about December 13, 2010. [*Id*. at ¶¶ 20–21.[1]] Pursuant to this Contract, Plaintiffs operated on the Marine Corps Base West to pick up and transport shuttle van and taxicab customers from Camp Pendleton. [*Id*. at ¶ 2.] In consideration of the award, Plaintiffs agreed to pay MCCS the commission amounts counter-proposed by the MCCS, which began at 5% of the net sales commissions, and grew by 1% per year, up to a total of 9%. [*Id*. at ¶ 22.] According to Plaintiffs, beginning in or about 2011 and continuing to this day, the Federal and Private Defendants allowed other individuals and entities to interfere with Plaintiffs' rights under the Contract to offer taxicab and shuttle van services from Camp Pendleton. [*Id*. at ¶ 27.]

Among other things, Plaintiffs allege that the Private Defendants, who also operate transport services at Camp Pendleton as Sea Breeze Shuttle, would tell customers they were not allowed to use Plaintiffs' transport services, tell customers Plaintiffs did not have the proper licenses or contracts to make pick ups at Camp Pendleton, intimidate or harass Plaintiffs' drivers, and submit false reports of Plaintiffs' alleged wrongdoing, all in an

---

[1] Document numbers and page references are to those assigned by CM/ECF for the docket entry.

effort to re-direct customers away from Plaintiffs and to the Private Defendants' transport services instead. [*Id.*]

Plaintiffs' principal met with its MCCS representative, an MCCS Officer at Camp Pendleton, to discuss these issues, who suggested Plaintiffs should be relived of any duty to pay commissions to the MCCS under the Contract. [*Id.* at ¶ 28.] Thereafter, Plaintiffs received a letter from MCCS advising Plaintiffs they would be receiving an automatic six-month extension of the Contract without the need to execute any additional paperwork, and without the need to pay any commissions. [*Id.*] Thereafter, in June 2017, MCCS issued an Order to ban Plaintiff LLI from Camp Pendleton. [*Id.* at ¶ 31.] Although Plaintiff AGT's taxicab operations were not the subject of that Order, they too were denied access for an approximate two-week period. [*Id.*] Plaintiffs allege that to this day that Order was never served on either of them, but instead they learned of it indirectly when some of the Private Defendants who had copies of the Order purported to read it aloud to Plaintiffs' drivers. [*Id.*]

Plaintiffs allege they have followed the designated administrative review processes for their complaints to the best of their knowledge and ability, as well as attended several meetings and hearings with MCCS representatives. [*Id.* at ¶ 32.] On September 22, 2018, Plaintiffs served their certified claim pursuant to 41 U.S.C. § 7101 *et seq.*, on all of the MCCS representatives. [*Id.*] On or about January 24, 2019, Plaintiffs received MCCS' reply, and thereafter, Plaintiffs' and MCCS' counsel engaged in additional correspondence. [*Id.*] Plaintiffs interpret the reply and MCCS counsel's subsequent correspondence as a denial of their claim and believe they have fulfilled their administrative duties prior to bringing the pending action in this Court. [*Id.*] Plaintiffs' complaint alleges claims against the Federal and Private Defendants for breach of the implied covenant of good faith and fair dealing, violation of unfair competition law, intentional interference with prospective economic relations, negligent interference with prospective economic relations, intentional interference with contractual relations, and negligence.

## II. APPLICABLE LAW

"The United States, as sovereign, is immune from suit save as it consents to be sued." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Two waivers of sovereign immunity are pertinent here. First, the Federal Tort Claims Act ("FTCA") waives the United States' immunity "for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of an employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Second, the Tucker Act waives the United States' immunity and bestows exclusive jurisdiction on the Court of Federal Claims ("COFC") in all actions "founded . . . upon any express or implied contract with the United States . . . in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). Unlike with FTCA causes of action, "[i]t has long been established that the law to be applied in construing or applying provisions of government contracts is federal, not state law." *Woodbury v. United States*, 313 F.2d 291, 295 (9th Cir. 1963).

The Contract Disputes Act ("CDA"), enacted in 1978, covers any claim based upon "any express or implied contract . . . made by an executive agency for—(1) the procurement of property, other than real property in being; (2) the procurement of services; (3) the procurement of construction, alteration, repair, or maintenance of real property; or (4) the disposal of personal property." 41 U.S.C. § 7102(a). Under the CDA, "procurement" means "the acquisition by purchase, lease or barter, of property or services for the direct benefit or use of the Federal Government." *New Era Constr. v. United States*, 890 F.2d 1152, 1157 (Fed. Cir. 1989) (quotation and emphasis omitted). The CDA sets forth its own jurisdictional requirements. *See M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327–28 (Fed. Cir. 2010). Under the CDA, claims by a government contractor against the United States must first be the subject of a decision by the contracting officer, defined as "any person who . . . has the authority to make and administer contracts and to make determinations and findings with respect to contracts." 41 U.S.C. §§ 7101, 7103.

The decision by the contracting officer may be appealed to an agency board of contract appeals or to the United States Court of Federal Claims. 41 U.S.C. §§ 7103, 7104. Further appeals from these bodies must be filed with the United States Court of Appeals for the Federal Circuit. 41 U.S.C. § 7107; *see United States v. Rockwell Int'l. Corp.*, 795 F.Supp. 1131, 1134 (N.D. Ga. 1992).

To determine if the CDA applies, the Court must look to whether the dispute at issue is one of contract. *See Ingersoll–Rand Co. v. United States*, 780 F.2d 74, 76 (D.C. Cir. 1985). The court in *Megapulse, Inc. v. Lewis*, 672 F.2d 959 (D.C. Cir. 1982), explained that courts should attempt "to make rational distinctions between actions sounding genuinely in contract and those based on truly independent legal grounds." 672 F.2d at 969–70. The *Megapulse* court further noted that, when examining "competing" jurisdictional bases, the issue is "to determine if the claim so clearly presents a disguised contract action that jurisdiction over the matter is properly limited to the Court of Claims." *Id.* at 968. It is well-established that disguised contract actions may not escape the CDA. *See, e.g., Ingersoll–Rand*, 780 F.2d at 77; *Am. Science & Eng., Inc. v. Califano*, 571 F.2d 58, 61 (1st Cir. 1978). Neither contractors nor the government may bring a contract action in federal district court simply by recasting claims in tort language or as some statutory or regulatory violation. *See Sealtite Corp. v. General Services Admin.*, 614 F.Supp. 352, 354 (D. Colo. 1985) (rejecting attempt to "circumvent the [CDA] by characterizing dispute as an action in replevin"). Effective enforcement of the jurisdictional limits of the CDA mandates that courts recognize contract actions that are dressed in tort clothing. *United States v. J & E Salvage Co.*, 55 F.3d 985, 987–88 (4th Cir. 1995); *see also Dalton v. Sherwood Van Lines, Inc.*, 50 F.3d 1014, 1017 (Fed. Cir. 1995) ("When the Contract Disputes Act applies, it provides the exclusive mechanism for dispute resolution; the Contract Disputes Act was not designed to serve as an alternative administrative remedy, available at the contractor's option.").

### III. DISCUSSION

The Federal Defendants contend Plaintiffs claims allege a contract dispute against

the federal government which should be presented in the Court of Federal Claims pursuant to the Contract Disputes Act and/or the Tucker Act. Plaintiffs respond that this is not a contract dispute but a tort action and therefore this Court has jurisdiction under the Federal Tort Claims Act. Further, Plaintiffs contend that this case also involves the wrongful acts of the Private Defendants and that the Federal Defendants, who drafted the Contract, have already admitted in writing that the Contract at issue here is a concessionaire contract that is not subject to the CDA. Finally, Plaintiffs contend that any deficiency to the complaint can be cured by amendment and if this case must proceed before the COFC then it should be transferred, rather than dismissed. While the Federal Defendants also appear to move to dismiss for failure to state a claim, their six-page motion and four-page reply almost entirely addresses only the issue of jurisdiction. Accordingly, this Order addresses only the issue of jurisdiction and does not make any findings as to the merits of Plaintiffs' claims, any statute of limitations arguments, or whether any individual defendants must be dismissed.

Plaintiffs first argue that this action is one in tort brought under the FTCA and not under the CDA. The Court is not persuaded. It is not clear how the FTCA applies as the complaint does not allege any injury or loss of property. Rather, a rational reading of Plaintiffs' claims necessarily requires the interpretation of Plaintiffs' Contract with the MCCS and its terms which appears to be an express contract made by an executive agency for the procurement of services. Moreover, contractors with the government may not bring contract actions in federal district court by recasting and disguising claims in tort language or as statutory or regulatory violations. *See, e.g., Ingersoll–Rand*, 780 F.2d at 77; *see also Sealtite Corp.*, 614 F.Supp. at 354. As Plaintiffs state in the complaint, "This action seeks damages . . . arising out of a governmental concessions contract . . ." and "tort claims arising from [the Contract]." [Doc. No. 1 at ¶¶ 1, 5.] Plaintiffs also contend that paragraph 37 of the complaint alleged compliance with the prerequisite for bringing an action under the FTCA as set forth in 28 U.S.C. 2675(a). However, paragraph 37 of the complaint states, "[Plaintiffs] served their [certified claim pursuant to] 41 U.S.C. [§] 7101 *et seq*." which is

in fact in reference to the CDA and not the FTCA. [Doc. No. 1 at ¶ 37.] Further references to the CDA and 41 U.S.C. § 7101 are attached to Plaintiffs' complaint and the purported certified claim. [*Id*. at 64, 66.]

Plaintiffs' contention that the Federal Defendants' should be bound by their written admission that the Contract was a concession contract not subject to the CDA in accordance with controlling law is erroneous. "[F]ederal courts are courts of limited jurisdiction . . . empowered to hear only those cases that (1) are within the judicial power of the United States, as defined in the Constitution, and (2) that have been entrusted to them by a jurisdictional grant by Congress." *United States v. Jacobo Castillo*, 496 F.3d 947, 951 (9th Cir. 2007) (quoting 13 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE § 3522, at 60 (2d ed. 1984) (footnote omitted)). Defects in the Court's subject-matter jurisdiction "go to the inherent power of the court and cannot be waived or forfeited." *Jacobo Castillo*, 496 F.3d at 952. Although the Federal Defendants' previous assertions to the Plaintiffs that the Contract was not subject to the CDA and the inclusion of such language within the Contract itself is indeed disconcerting, such actions cannot bestow jurisdiction upon this Court. As stated in the same cases the Federal Defendants improperly relied upon for their previous assertions, "only Congress can waive sovereign immunity; parties may not by contract bestow jurisdiction on a court." *Pacrim Pizza Co. v. Pirie*, 304 F.3d 1291, 1293–94 (Fed. Cir. 2002); *see also Ins. Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 701–02 (1982) ("[Federal court jurisdiction is] limited to those subjects encompassed within a statutory grant of jurisdiction . . . [N]o action of the parties can confer subject matter jurisdiction upon a federal court.").

Furthermore, the cases relied upon that hold concession contracts are not subject to the CDA are uninstructive. As a preliminary matter, the CDA does not distinguish between concession and nonconcession contracts. These cases also rely on an inapplicable regulation involving concession contracts with the National Park Service, *see Coffee Connections, Inc. v. United States*, 113 Fed. Cl. 741, 751 (2013) (relying in part on 36

C.F.R. § 51.3, relating to concession contracts under the National Park Service Concession Policies Act of 1965); *Terry v. United States*, 98 Fed. Cl. 736, 737 (2011) (same). The Contract at issue in this case does not involve the National Park Service, and Plaintiffs have not explained why regulations limited to the National Park Service Concession Policies Act of 1965 should inform this Court's analysis.

Accordingly, Plaintiffs' claims cannot overcome this Court's lack of jurisdiction by framing them as sounding in tort. The gravamen of Plaintiffs' claims relates to both the Private and Federal Defendants' actions as they pertain to Plaintiffs' Contract with the United States, and therefore jurisdiction exists exclusively with the COFC pursuant to the CDA, or alternatively, the Tucker Act.

**IV. CONCLUSION**

For the reasons set forth above, the motion to dismiss is **GRANTED in part**[2] and pursuant to 28 U.S.C. § 1631, the Clerk of Court **SHALL TRANSFER** this action to the United States Court of Federal Claims.

It is **SO ORDERED**.

Dated: October 15, 2019

_____
Hon. Cathy Ann Bencivengo
United States District Judge

---

[2] Accordingly, the Court does not make any findings with respect to the merits of Plaintiffs' allegations, any statute of limitations argument, or whether any individual defendants must be dismissed.